UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

JACOB RUSH, et al.,                )
                                   )    Case No. 1:07CV1068
                                   )
          Plaintiffs,              )
                                   )
     vs.                           )    JUDGE KATHLEEN O'MALLEY
                                   )    (Magistrate Judge McHargh)
CITY OF MANSFIELD,                 )
          et al.,                  )
                                   )
          Defendants.              )    MEMORANDUM
                                   )    AND ORDER
                                   )

McHARGH, Mag.J.

     The defendants have filed objections to the Memorandum and Order on the

plaintiff's motion to amend the case management plan, (doc. 159, 161; see also doc.

141, 153), and the court has instructed the undersigned Magistrate Judge to

reconsider his ruling, in light of the objections.  (Doc. 206.)

     Rush had moved to permit filing of an amended expert report "because the

Bosko investigative file was produced on the eve of Dr. Lyman's deposition and was

not referenced in his report or deposition.  Also, during the depositions in the

consolidated cases it was discovered that Dr. Lyman did not receive all of the case

materials that were sent to him by plaintiffs' counsel and therefore had not

reviewed some of the case materials before deposition." (Doc. 141, at 1.)  Rush

represented that:  "No substantial changes have been made to his [Dr. Lyman's]

opinions.  The facts cited have been slighted expanded."  Id. at 3.

Rush stated that counsel had promptly notified defense counsel, on the first

business day after the depositions, that he would seek to amend the report, and

offered to make Dr. Lyman available for re-deposition.  Id., and PX B.

In considering the plaintiffs' motion, the court had looked to the "primary

measure" of the good cause standard under Rule 16, which is "the moving party's

diligence in attempting to meet the case management order's requirements." (Doc.

153, at 10, citing Inge v. Rock Fin. Corp., 281 F.3d 613, 625 (6th Cir. 2002)).  The

court also considered whether the opposing party would suffer "significant

prejudice" if the amendment were granted.  Id. at 11-13; citing Leary v. Daeschner,

349 F.3d 888, 906 (6th Cir. 2003); Inge, 281 F.3d at 625.

In opposing the motion to amend, the defendants had argued that the

plaintiffs had not been diligent in complying with the case management plan.  (Doc.

145, at 2-3.)  The court found that plaintiffs had been reasonably diligent,

particularly in light of the protracted dispute over the investigative file, which was

not provided to the expert until days before his scheduled deposition.  (Doc. 153, at

12-13.  The court also took into account that the amended report was provided to

the defendants in time for their expert to contradict or refute any disputed

assertions in it prior to the defense expert witness deadline of Sept. 26, 2008.  (See

doc. 94.)

In addition, the defendants claimed that good cause was lacking because of the significant prejudice they would suffer if the expert, Dr. Lyman, was permitted to amend his report. (Doc. 145, at 3.) They argued that the report "contains newly formed commentary and opinions about the order of shots fired during the execution of the search warrant." Id. at 3, citing amended Lyman report, [doc. 141, PX A], at 10-11. They asserted that admission of the amended report would require them to re-depose Dr. Lyman:

> . . . on issues already fully covered in his prior full-day deposition. See September 3, 2008 transcript[1], pg. 24 (Dr. Lyman takes no issue with Jeffrey Frazier or Officer Bammann firing upon Gilbert Rush when Gilbert Rush pointed his shotgun at them).

Id.

This was the sole example provided by defendants in their original motion. See generally doc. 145, at 3-4. It is not ordinarily incumbent on the court to search the record for material support for either party's position. See generally Guarino v. Brookfield Township Trustees, 980 F.2d 399, 404-405 (6th Cir. 1992) (summary judgment).

Looking at the citations provided by defendants would lead one to assume that the defendants were concerned with the description of the fatal shooting of Gilbert Rush by Officers Frazier and Bammann, which is located at page 10 of the

---

[1] Although they cite to it, the defendants did not provide a transcript of the Lyman deposition. The transcript was subsequently filed on Dec. 21, 2008, (doc. 191), after the Memorandum and Order had been prepared.

amended report.  See doc. 141, PX A, at 10; and doc. 145, at 3, citing PX A, at 10-11.)

Although defendants characterized the change as "newly formed commentary and opinions," doc. 145, at 3, it is in fact a recasting of factual assertions based on direct deposition testimony, rather than a second-hand description based on the Faith report.  Notwithstanding that the change was arguably material, the court did not consider it to cause a "substantial prejudice" to the defendants, such that the change would necessitate a second deposition.

Objections

In their objections to the Memorandum and Order, the defendants now supplement their arguments.  The Mansfield defendants object to the admission of the amended report "where it included information and opinions wholly unrelated to the criminal investigative file."  (Doc. 159, at 1-2.)  Mansfield now specifically cites several revisions, and states that "all of this information was readily available to Plaintiffs' expert prior to July 24, 2008," the deadline for plaintiffs' expert report.  Id. at 2.  They complain that the plaintiffs improperly took advantage of the delay in producing the investigative file to "redraft and shore-up their expert's report after the fact."  The Mansfield defendants request that the contested portions of the amend report be stricken.  Id. at 2-3.

The defendant Richland County similarly argues that the amendments in the expert report be limited to information pertaining only to the criminal investigation

file.  (Doc. 161, at 1.)  Richland claims that the amendments "significantly modify the expert opinions of Michael Lyman."  Id.  Richland contends that "Lyman has significantly amended his report and made substantive changes to his report."  Id. at 2.  They point out that the information used to amend his report was available to him months in advance, and argue that the changes "are little more than a cynical exercise in overcoming the perceived inadequacy of his sworn testimony at deposition."  Id. at 2-3.  Richland repeats their argument that Dr. Lyman should not be allowed to supplement his report outside the original time frame for the submission of expert reports.  Id. at 3.

Richland argues, as does Mansfield, that "Plaintiffs' expert's supplemental report goes above and beyond simple record citations and clarifications.  His report attempts to add new opinions beyond that relating to the criminal investigation file."  Id. at 3-4.  For example, "Lyman opines that the members of the ASORT Team fired their weapons upon Gilbert Rush, Jr. first.  Mr. Lyman based this opinion on the deposition of [Sheriff's Deputy] Robert Gouge which he had received from the Plaintiffs well in advance of his deposition."  Id. at 4, citing doc. 141, PX A, at 9.  Also, Dr. Lyman "attempted to modify his report by adding facts that deal with the actual death of Gilbert Rush."  Id., citing doc. 141, PX A, at 9.  And Richland points to a third example, a discussion regarding whether the occupants of the house recognized  the ASORT Team as the police.  Id.

The court has examined anew the amended report as a whole, paying particular attention to the new examples, which defendants belatedly bring to the

court's attention, of the contested amendments.  In addition, the court considered other relevant materials which have been filed by the parties since the Oct. 15, 2008, Memorandum and Order.

First of all, the court rejects the contentions that Dr. Lyman's amended report contains new or revised opinions.  In fact, the amended report contains the exact same opinions, eleven in all, which are set forth in the original report. Compare doc. 121, PX A, with doc. 141, PX A.  These same eleven opinions were the basis for rebuttal by defendants' expert report.  See doc. 158, DX A.

Nonetheless, there are undeniably several changes to factual assertions.  For the most part, the contested changes cite to deposition testimony, rather than second-hand summaries from the Faith report.  The question arises as to the prejudice suffered by the defendants from these amended factual assertions.  The defendants cite to a very small portion of the complete thirty-four page report as objectionable.  The amendments do not impact the actual conclusions of Dr. Lyman's opinions, or the validity of the rebuttal by defendants' expert.  See generally doc. 158, DX A.


Diligence

On reconsideration, however, the court revisits the issue of plaintiffs' diligence in attempting to meet the case management order's deadline, which is the "primary measure" of the good cause standard.  Inge, 281 F.3d at 625.  The court had provided for "supplemental [expert] reports" in the Case Management Plan.

6

(Doc. 28, at § 6.) Plaintiffs' supplemental report would have been due forty-eight

hours prior to the expert's scheduled deposition, which in this case would have been

Sept. 1, 2008 (prior to the scheduled Sept. 3 deposition).

Plaintiff's counsel received the contested Bosko investigative file on

Saturday, Aug. 30, 2008, just days before the deadline. (Doc. 141, PX B, at ¶ 4.) In

this context, Rush had several choices: 1) not submitting a supplemental report; 2)

submitting a supplemental report within the case management schedule which, as

a practical matter, could not address the Bosko file, evidence which both sides had

strenuously contested; 3) attempting to submit a more complete supplemental

report outside the deadline; or 4) seeking to delay Dr. Lyman's deposition.

Had Rush chosen the second alternative, submitting a supplemental report

within the deadline (and presumably not addressing the Bosko investigative file),

the defendants' arguments, that some information used to supplement the report

was available to Dr. Lyman months in advance, would have less weight.

Instead, Rush chose to attempt to seek leave to submit a supplemental report

outside the original deadline. The Rush plaintiffs have not stated that they had

planned to submit a supplemental report within the deadline, prior to the last-

minute reception of the Bosko materials. Nor is there any indication that plaintiffs

attempted to reschedule the Lyman deposition, to allow for an expanded deadline in

which to submit a supplemental report. As it happens, plaintiffs admit that the

amended report "reflects a few citations to the criminal investigation file but in

7

general the file did not cause Dr. Lyman to alter any opinions." (Doc. 141, at 2, and PX B.)

Rush had also argued that the amended report was necessary because Dr. Lyman "did not receive all of the case materials that were sent to him" and thus had not reviewed these prior to deposition.  Id. at 1-2.  Rush does not specify exactly which relevant materials were not received in time, and it is not apparent in light of what subsequently appears in the amended report.

Several contested changes in the amended report cite to deposition testimony.  For example, the section of the Lyman report has been changed which recites the events where Rush appeared at the kitchen window and fired his shotgun.  Compare doc. 121, PX A, at 9, with doc. 141, PX A, at 9.  The paragraph at issue is not footnoted in the original report, but the preceding and following notes both cite to "Faith report and notes, p. 4."  In the amended report, there is a citation to the Gouge deposition.  (Doc. 141, PX A, at 10 n.20.)  Gouge was deposed on Nov. 20, 2007.  The deposition of Gouge was mailed to Dr. Lyman on March 6, 2008.  (Doc. 191, DX D.[2])  Dr. Lyman referred to Gouge's testimony at his Sept. 3, 2008, deposition, in response to a question as to who had fired first.  Dr. Lyman answered: "Officer Gouge fired the first shot with his handgun." (Doc. 191, Lyman dep., at 48;

---

[2] This material, exhibits accompanying Lyman's deposition, was not filed until Dec. 21, 2008 (doc. 191), thus was not available to the court for its initial Memorandum and Order on the motion.

see generally doc. 124, Gouge dep., at 18, 42-43.)  Apparently Dr. Lyman was able to review Gouge's testimony prior to his deposition.

The description by Officer Bammann of the position of Gilbert Rush in the kitchen when the officers entered has also been modified.  In the original Lyman report, the citation is to the Bammann statement in the Faith report summary of statements.  (Doc. 121, PX A, at 10 n.20.)  In the amended report, the citation is to the Bammann deposition itself.  (Doc. 141, PX A, at 10 n.25.)  Bammann was deposed on Nov. 30, 2007.  The deposition of Bammann was first mailed to Dr. Lyman on March 6, 2008.  (Doc. 191, DX D.)  Dr. Lyman was provided with a second copy of the deposition on May 27, 2008.  (Doc. 191, DX C, at [18].)  According to Dr. Lyman's invoice, he reviewed the Bammann deposition on June 5, 2008.  (Doc. 191, DX E, at 2.)  The Bammann deposition apparently was not among the materials which had not been received, and reviewed, in time to meet the Sept. 1 deadline for a supplemental report.

In that same discussion in the amended report, a citation is added to the Wheeler deposition.  (Doc. 141, PX A, at 10 n.26.)  Dr. Lyman was provided with a copy of Wheeler's deposition on May 12, 2008.  (Doc. 191, DX B, at [38].)  According to Dr. Lyman's invoice, he reviewed the Wheeler deposition on June 6, 2008.  (Doc. 191, DX E, at 2.)  The Wheeler  deposition could not have been among the materials which had not been received in time to meet the proper deadline.

Deputy Frazier's account is also relevant to the kitchen shooting.  See generally doc. 141, PX A, at 10.  Frazier was deposed on Feb. 29, 2008.  Dr. Lyman

reviewed the Frazier deposition on April 20, 2008.  (Doc. 191, DX E, at 1; see also

doc. 191, DX B, at [38].)  The Frazier  deposition also was not among the materials

which had not been received in time to meet the deadline.

It is unclear, then, which materials Rush claims Dr. Lyman was unable to

review in time to submit a supplemental report within the case management time

frame.  Rush has not provided supporting details.  It appears from the examples

above that Dr. Lyman was provided with relevant data for his assertions in the

amended report in time for inclusion in his original July 24 report.  It is unclear

why references to these depositions do not appear in his original report, but then

appear in the amended report.

Supplementation of an expert report is allowed "to correct inadvertent errors

or omissions."  Gallagher v. Southern Source Packaging, LLC, 568 F.Supp.2d 624,

630 (E.D. N.C. 2008).  However, supplementation "does not cover failures of

omission because the expert did an  inadequate or incomplete preparation."  Akeva

L.L.C. v. Mizuno Corp., 212 F.R.D. 306, 310 (M.D. N.C. 2002).

The defendants' objections (doc. 159, 161) are SUSTAINED, and any

amendments or changes which are not directly related to the Bosko investigative

file shall be stricken from the amended expert report (doc. 141, PX A).

The  plaintiffs' motion to modify the Case Management Plan (doc. 141) is

GRANTED in part and DENIED in part, as discussed above.  See also doc. 153.

IT IS SO ORDERED.

Feb. 24,  2009                           /s/ Kenneth S. McHargh

10

Kenneth S. McHargh
United States Magistrate Judge